JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

AUDREY FOBER,

       Plaintiff,

  v.

MANAGEMENT AND TECHNOLOGY CONSULTANTS, LLC,

       Defendant.

Case No.: SACV 15-01673-CJC(DFMx)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

    Plaintiff Audrey Fober brings this action against Defendant Management and Technology Consultants, LLC ("MTC") for violations of the Telephone Consumer

Protection Act ("TCPA"), 47 U.S.C. § 227.  Before the Court is MTC's motion for summary judgment.  (Dkt. 30.)  For the following reasons, the motion is GRANTED.[1]

## II. BACKGROUND

In 2011, Plaintiff Audrey Fober enrolled in a health insurance plan provided by Health Net of California, Inc.[2]  (Dkt. 36 ["Undisputed Facts" ("UF")] #1.)  At the time of her enrollment, she submitted an Enrollment Form, which included—among other things—her telephone number.  (Dkt. 39-2 ["Enrollment Form"].)  The Enrollment Form also contained the following provision:

> **THE USE AND DISCLOSURE OF PROTECTED HEALTH INFORMATION:** I acknowledge and understand that health care providers may disclose health information about me or my dependents to Health Net Entities [and other entities not relevant here].  Health Net Entities [and the other entities] use and may disclose this information for purposes of treatment, payment and health plan operations, including but not limited to, utilization management, quality improvement, disease or case management programs.

(Enrollment Form at 3.)

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for August 8, 2016 at 1:30 p.m. is hereby vacated and off calendar.

[2] Throughout the briefing on this motion, Defendant MTC took considerable care to redact Plaintiff's health information, including the names of her health plan, her medical group, an associated medical group, her health network, and her doctor.  Plaintiff seems less concerned.  Her response to Defendant's statement of undisputed facts mentions *all* of the above entities by name.  (Dkt. 36.)  She separately filed an unredacted declaration that names her doctor, (Dkt. 35-1), and a brief that names her health plan and the associated medical group, (Dkt. 45).  While the Court understands that Defendant was obligated to exercise care in not disclosing the identity of Plaintiff's medical providers, it concludes from the record that Plaintiff does not object to the disclosure of that information.  This order therefore names the medical providers involved in the factual background of this case.

Health Net assigned Plaintiff a medical group and a primary care physician. (UF #2.) The parties agree that Plaintiff's primary care physician, Dr. Barry Schwartz, contracts with her assigned medical group, Affiliated Doctors of Orange County ("ADOC"), and that ADOC and a related medical group, Regal, are affiliated medical groups of a larger provider network, Heritage. (*Id.* ## 4–5.) Heritage selected Regal to "manage the patient satisfaction survey business relationship with MTC," a survey provider, on behalf of both Regal and ADOC. (Dkt. 29 ["Swenson Decl."] ¶ 8.) Both Regal and Heritage have contractual agreements with MTC to provide survey services. (*Id.* Exhs. C; D.)

Plaintiff visited Dr. Schwartz in 2014 to receive care. (UF #9.) While there, she filled out an intake form. (Dkt. 30-6 ["Intake Form"].) The Intake Form asked for Plaintiff's telephone number, which she provided. (*Id.*) The form also contained the following provision:

> I authorized [sic] the undersigned physician to give treatment and to release of [sic] any medical or other information necessary to process the claim and referral. I also authorized [sic] payment of medical benefits to the undersigned physician for each medical service given.

(*Id.* (capitalization altered).)

Plaintiff therefore provided her phone number to her health care providers twice: once to Health Net, in 2011, and then again to Dr. Schwartz in 2014. That information then made its way to Regal. Regal's Vice President of Legal Affairs, Mary Coash, explains that after a health plan—like Health Net—assigns a member to either Regal or ADOC, the health plan transmits the member's contact information to the right medical group. (Dkt. 30-11 ["Coash Decl."] ¶ 6.) Regal and ADOC evidently share information, and when a health plan member assigned to *either* Regal or ADOC visits a primary care

physician, Regal transmits that member's contact information to MTC so that MTC can survey the member regarding the visit.  (*Id.* ¶ 7.)

In accordance with this general course of business, Health Net assigned Plaintiff to ADOC and provided her contact information, including her telephone number, to ADOC, who shared it with Regal.  (*See* Coash Decl. ¶ 9.)  Based on the information from Health Net, Regal created a member record for Plaintiff, and that record included her telephone number.  (Coash Decl. Exh. 1.)  When Plaintiff visited Dr. Schwartz in 2014, Regal sent Plaintiff's name, phone number, and the dates of her visits to MTC, so that MTC could survey Plaintiff about her care over the phone.  (Coash Decl. ¶¶ 9–10.)  Unhappy with the telephone calls, and believing them to violate the TCPA, Plaintiff filed this action.

## III.  DISCUSSION

The TCPA provides that it is unlawful for any person to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]"  47 U.S.C. § 227(b)(1)(A)(iii).  The parties agree that MTC called Plaintiff on her cell phone.[3]  All that it is presently at issue is whether Plaintiff had given her "prior express consent" to be contacted by telephone regarding the quality of the care she received from Dr. Schwartz.

The Federal Communications Commission ("FCC") has authority to prescribe regulations to implement the TCPA, *see* 47 U.S.C. § 227(b)(2), and determined in 1992 that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent

---

[3] Although Defendant does not concede that it used an automatic telephone dialing system ("ATDS"), the use of such a system is not at issue in this motion.

-4-

instructions to the contrary." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Report and Order*, 7 FCC Rcd. 8752, 8769 (Oct. 16, 1992) (the "1992 Order"); *see also In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 565 (Jan. 4, 2008) (extending this general rule to cell phones). Recently, the FCC has determined that "the TCPA does not prohibit a caller from obtaining a consumer's prior express consent through an intermediary," but that "the scope of consent must be determined upon the facts of each situation," and "an intermediary can only convey consent that has actually been obtained." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act*, 30 FCC Rcd. 7961, 7990–91 (July 10, 2015). The FCC has also "ma[de] clear that consent to be called at a number in conjunction with a transaction extends to a wide range of calls 'regarding' that transaction," even when the calls are made by a third party. *Matter of GroupMe, Inc./Skype Comm'ns*, 29 FCC Rcd. 3442, 3446 (March 27, 2014).

Consistent with this FCC guidance, courts in this circuit commonly grant summary judgment to defendants in TCPA cases when a plaintiff provides his or her phone number in conjunction with a transaction and is then called regarding some aspect of that transaction, even when the phone calls are ultimately made by a third party. In *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100 (C.D. Cal. 2014), *aff'd*, 636 Fed. Appx. 715 (9th Cir. 2016), for example, the plaintiff purchased airline tickets from Hawaiian Airlines, and in the process, provided the airline with her phone number. *Id.* at 1101. Some time later, before the plaintiff's flight, a third party contractor for the airline, Sabre, sent the plaintiff a text message inviting her to opt in to flight notification services. *Id.* She sued, alleging that the text message violated the TCPA. The district court awarded summary judgment to Sabre. It noted that the plaintiff's "act of providing her cellphone number was a voluntary act," that she therefore "consented to be contacted on her cellphone about flight-related matters," and that there was "no genuine factual dispute over the fact that Hawaiian Airlines contracted with Sabre to provide flight notification services to its

passengers." *Id.* at 1106. Accordingly, the district court concluded, the plaintiff had provided prior express consent under the TCPA. *Id.*

Similarly, in *Van Patten v. Vertical Fitness Grp., LLC*, 22 F. Supp. 3d 1069 (S.D. Cal. 2014), the plaintiff provided his phone number while signing up for a gym membership. (He subsequently canceled the membership less than three days later.) Several years later, a new owner of the gym engaged a marketing company to contact former members and encourage them to return. *Id.* at 1072. The marketing company sent the plaintiff two text messages, and he sued. *Id.* The district court straightforwardly concluded that the plaintiff had "consented to receiving the texts at issue when he provided his phone number upon joining the gym," even though the gym didn't inform the plaintiff that it might use his number for marketing calls. *Id.* at 1071; 1078.

Plaintiff does not dispute that she provided her phone number to Health Net and to Dr. Schwartz, and that she therefore consented to receive *some* sort of phone calls. She insists, however, that the phone calls she ultimately received fall outside the scope of the consent she actually gave. The FCC has directed that "the scope of consent must be determined upon the facts of each situation," *In the Matter of Rules and Regulations*, 30 FCC Rcd. at 7990–91, and a handful of district courts have determined that when a consumer furnishes his or her phone number, courts should inquire into the surrounding circumstances to determine the proper scope of consent rather than just expect consumers to impose conditions on consent themselves. Among those cases, Plaintiff relies most heavily on an out-of-circuit district court case, *Kolinek v. Walgreen Co.*, Case No. 13 C 4806, 2014 WL 3056813 (N.D. Ill. July 7, 2014). There, the plaintiff filled a prescription at a Walgreens pharmacy sometime between 2002 and 2012. He provided his phone number in order to receive the prescription, and was allegedly told by the pharmacist that his number was "needed for verification purposes"—i.e., if another customer with the same name attempted to retrieve the plaintiff's prescriptions, the pharmacy could use the phone number to verify the individual's identity. *Id.* at *1. The plaintiff subsequently

began receiving automated phone calls from Walgreens reminding him to refill his prescription. He sued, alleging that the phone calls violated the TCPA. The district court denied the pharmacy's motion for summary judgment, noting that "[c]onsent for one purpose does not equate to consent for all purposes," and that "factual development" was required to determine the actual scope of the plaintiff's consent, which was disputed. *Id.* at *4. The *Kolinek* court rejected a "general rule that if a consumer gives his cellular phone number to a business, she has in effect given permission to be called at that number for any reason at all, absent instructions to the contrary," instead adopting a more flexible approach—mandated, in the *Kolinek* court's view, by the FCC's rulings on consent—that would require courts to look to the "context" and "purpose" of a consumer's consent. *Id.*

Plaintiff puts an enormous amount of weight on *Kolinek*, which she describes as "stand[ing] as the law of the land" when it comes to consent. (This is nonsensical; *Kolinek* is not even the controlling law of the Northern District of Illinois, much less every federal court in the country.) But in any event, *Kolinek* does Plaintiff no good here, because the scope of Plaintiff's consent is undisputed in the record and clearly covers the phone calls she received. When Plaintiff provided her phone number to Health Net, she agreed that Health Net and its related entities could use *and disclose* her phone number for "purposes of treatment, payment and health plan operations, including but not limited to, utilization management, quality improvement, disease or case management programs." (Enrollment Form at 3.) Health Net disclosed her phone number to ADOC and Regal, who contracted with MTC to provide care surveys, something that plainly falls within "quality improvement." (*See generally* Coash Decl.; Swenson Decl.) And even if it didn't, the Enrollment Form's consent provision is deliberately broad, extending to all "purposes of treatment, payment, and health plan operations, including *but not limited to*" the list of particular uses that follow. (Enrollment Form at 3.) Providing a patient's contact information to the patient's assigned medical group, who then contracts

1  with a company to survey that patient about the quality of her care, falls within
2  "treatment, payment, and health plan operations" under the scope of the Enrollment
3  Form's consent provision.[4]  That is the end of the matter.

5        Plaintiff argues that the Enrollment Form is "ambiguous," and that consent must be
6  "clearly and unmistakably stated," citing *Satterfield v. Simon & Schuster*, 569 F.3d 946,
7  955 (9th Cir. 2009).  In *Satterfield*, the Ninth Circuit reversed a district court's grant of
8  summary judgment to a TCPA defendant where the plaintiff had consented to receive
9  promotional material from a company, Nextone, and its "affiliates and brands," but
10 ultimately received phone calls from the defendant, who the Ninth Circuit held was
11 neither an affiliate nor a brand of Nextone.  *Id.*  Because that was so, and because the
12 record revealed "no agreement between Nextone" and the defendant, the Ninth Circuit
13 reasoned that the plaintiff had not consented to the phone calls.  *Id.*  But Plaintiff relies
14 too heavily on *Satterfield*, which is distinguishable in two ways.  First, the Enrollment
15 Form at issue here does not contain the limitation that the agreement in *Satterfield* did,
16 limiting consent to "affiliates and brands" of Health Net.  Instead, it is far-reaching,
17 permitting Health Net to use *and disclose to others* Plaintiff's phone number for any
18 number of purposes, including generic "health plan operations." (Enrollment Form at 3.)
19 And even if the Enrollment Form *did* have a provision like the one at issue in *Satterfield*,
20 it is undisputed here that both Heritage and Regal have contractual agreements with MTC
21 to provide survey services. (*See generally* Swenson Decl.)

23       Nor does Plaintiff identify any real ambiguities in the Enrollment Form.  She
24 seems to believe that the consent provision's breadth makes it ambiguous, but this is not
25 so.  *See F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 964 (9th Cir. 2010) ("A

---

[4] Indeed, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") explicitly defines "health care operations" to include "[c]onducting quality assessment and improvement activities." 45 C.F.R. § 164.501.  It is difficult to imagine a more paradigmatic "quality assessment" activity than a patient survey.

contractual term is not ambiguous just because it is broad."). Plaintiff, who consented to the phone calls she received, may not survive summary judgment in a TCPA case merely by noting the wide scope of the relevant consent provision and then labeling that provision "ambiguous."

At bottom, when Plaintiff enrolled in her plan with Health Net, she signed a form that permitted Health Net to disclose her phone number for the purposes of, among other things, health plan operations and quality improvement. She was subsequently contacted, at the telephone number she provided, for those purposes, by an entity that received her phone number—albeit via Regal and ADOC—from Health Net. Plaintiff consented to the calls she received, and her cause of action under the TCPA necessarily fails.[5]

## IV.  CONCLUSION

For the foregoing reasons, Defendant MTC's motion for summary judgment is GRANTED.

DATED:     July 29, 2016

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

[5] As the Enrollment Form clearly constitutes prior express consent to the phone calls Plaintiff received, there is no need for the Court to consider whether the Intake Form does as well.